IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GEORGE CALLIS, | * | |
|     Plaintiff, | * | |
| | * | |
| v. | * | Civil No. L-08-3227 |
| | * | |
| UNIVERSITY OF MARYLAND MEDICAL | * | |
| SYSTEM CORPORATION, | * | |
| | * | |
|     Defendant. | * | |
| | * | |

*************

## MEMORANDUM

This is an employment discrimination case. Plaintiff George Callis ("Callis") filed a complaint against the University of Maryland Medical System Corporation (the "Medical Center") on December 1, 2008. In his complaint, Callis alleges that he was terminated from his position as a hospital security guard because of a disability, that he endured a hostile work environment because of his sex (male), and that his termination was in retaliation for complaining about discriminating remarks and acts directed toward him by co-workers.

The Medical Center moved for summary judgment, arguing that Callis was terminated because he used an automated teller machine ("ATM") located at a Medical Center hospital to withdraw $100.00 from a hospital guest's bank account without authorization. Because the briefs adequately address the issues, no hearing is necessary. See Local Rule 105.6 (D. Md. 2009). For the reasons stated herein, the motion will, by separate order of even date, be GRANTED and the case CLOSED.

1

I.   **BACKGROUND**

Callis, who is HIV-positive,[1] began working for the Medical Center as a security guard in November 2006. In May 2007, Callis advised a supervisor, Theodore Purnell ("Purnell") that a co-worker, John Alton ("Alton"), made derogatory comments regarding Callis's sexual orientation and HIV status. Purnell sent a memorandum to Alton stating Callis's claims and advising Alton that, if the allegations were true, such behavior was in violation of Medical Center policies and would subject Alton to disciplinary action. Callis did not file a complaint with the Human Resources Department about this incident. On deposition, Callis was unable to identify any instance of mistreatment because of his sexual orientation or HIV status between June 2007 and January 2008.

On June 8 and 18, 2007, Callis complained to Anthony Rindal, the Medical Center's Security Manager, that Alton had denied him overtime hours and that another security officer had written him up for leaving early one day due to illness. Callis alleged that the write-up resulted in a three-month suspension of overtime hours. Callis stated in the complaints that he felt "discriminated against." Def. Ex. 15 & 16. On deposition, Callis conceded that his overtime hours increased after he made these complaints and he was unable to identify any time between June 2007 and January 2008 that he was denied overtime.

It is undisputed that on January 20, 2008, shortly before beginning his shift, Callis used an ATM in the hospital lobby, making an unauthorized withdraw of $100.00 from Stephen Stewart's ("Stewart") bank account. Stewart was a hospital guest and used the ATM immediately prior to Callis. Stewart accidentally left his card in the machine. Callis claims that he was distracted and did not realize that he withdrew the money from Stewart's account until Stewart's card was ejected from the machine. Callis states that he heard "voices" telling him to

---

[1] Pla. Ex. 8.

2

take the money, but he ultimately decided to turn the money over to his immediate supervisor, Carl Brazille ("Brazille").

Callis alleges that he turned the money, the card, and receipt over to Brazille and made an initial statement.[2] Soon thereafter, however, these items, including the initial statement, went missing and were never found.

The Medical Center investigated the incident and determined that at best Callis and Brazille were grossly negligent, and at worst they had committed a theft. The Medical Center concluded that the incident warranted termination because both Callis and Brazille failed to protect the property of Medical Center guests, one of their primary responsibilities as security guards.

On February 1, 2008, Callis emailed the Human Resources Department stating that he was being investigated for "some missing money" and complaining that Rinaldi did not take steps to resolve his May and June 2007 complaints and that Purnell had made sexual advances toward him. Def. Ex. 10. The Medical Center stayed Callis's termination pending an investigation into his claims. As a result of its investigation, the Medical Center determined that there was insufficient evidence to support Callis's allegations against Purnell and that Callis's rights with respect to the 2007 complaints were addressed in accordance with Medical Center policies and applicable law. Callis was thereafter terminated on February 8, 2008.

Callis appealed his termination, using the Medical Center internal appeals process. The termination was upheld at each level of review. Callis then filed a timely action with the EEOC. After conducting an investigation, the EEOC was unable to conclude that the conduct of which

---

[2] Callis and Brazille dispute the amount of money Callis turned in. Instead of $100.00 as Callis claims, Brazille stated that Callis only turned in $40.00.

Callis complained violated applicable law. The EEOC issued Callis a right to sue letter, and he timely filed the instant suit.

## II. STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

## III. ANALYSIS

### A. Callis's Sex Discrimination Claim

Before an aggrieved individual may bring suit in federal court under Title VII, he must file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(f)(1). The EEOC charge provides the scope of a subsequent federal lawsuit. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). The Fourth Circuit has held that a plaintiff's claim will usually be barred if the charge alleges one type of discrimination (such as sex) and the complaint alleges a different type of discrimination (such as race). See Bryant v. Bell Atlantic Maryland Inc., 288 F.3d 124, 132–33 (4th Cir. 2002).

In his EEOC charge, Callis indicated that the discrimination of which he was complaining was based on retaliation and disability. In his factual statement, Callis stated that "I complained about being called offensive names by my co-worker, denial of overtime, the assignment of less desirable posts and a disciplinary action taken against me. On February 8, 2008, I was discharged from my position as an Officer." Pla. Ex. 2.

Count II of Callis's complaint, titled "Sex Discrimination," alleges that he was subjected to a hostile work environment based on his sex (male) and was "mistreated and called derogatory names because he was perceived as being 'gay.'" Paper No. 1, p. 6. It is the Court's opinion that Callis does not allege this type of discrimination in his EEOC charge, meaning that the claim was not administratively exhausted.

Nevertheless, even if Callis did administratively exhaust his hostile work environment claim, the claim does not survive summary judgment. In order to make out a *prima facie* case for a gender-based hostile work environment harassment claim under Title VII, Callis must demonstrate that the harassment was (1) unwelcome, (2) based on his gender, (3) sufficiently severe or pervasive as to alter his working conditions and/or create an abusive atmosphere, and (4) that there is some basis for imposing or imputing liability on the defendant. See Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183–84 (4th Cir. 2001); Smith v. First Union Nat'l Bank, 202 F.3d 234, 241 (4th Cir. 2000).

Callis does not contend that he was deprived of overtime hours or assigned to less desirable posts because of his gender or perceptions about his sexual orientation.[3] He merely alleges that he was called derogatory names by a co-worker. Callis does not dispute that the Medical Center addressed his complaints about Alton's comments by warning Alton that such

---

[3] Callis's complaints about disciplinary actions taken against him by the Medical Center will be discussed *infra* with Callis's retaliation claim.

statements, if true, would warrant disciplinary action. Callis does not contend that he was subjected to name-calling after that point. Under the law, isolated instances of name calling are not sufficient to constitute a hostile work environment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (stating that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"). Accordingly, the Medical Center is entitled to summary judgment on this claim.

**B.     Callis's Retaliation Claim**

Under the framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973), the plaintiff must first prove a *prima facie* case of discrimination. If the plaintiff succeeds, the defendant has the opportunity to present a legitimate, nondiscriminatory reason for its conduct. If the defendant does so, the burden of persuasion shifts back to the plaintiff show that the defendant's reason was merely pretext for discrimination.

To establish a *prima facie* case of retaliation, Callis must prove that he engaged in a protected activity, that the Medical Center imposed some cognizable adverse employment action, and that the Medical Center took the adverse action *because* Callis engaged in the protected activity. Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007). Because this task is not an onerous one, see Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981), the Court will assume *arguendo* that Callis has satisfied this burden.

The Medical Center has presented a legitimate, nondiscriminatory reason for terminating Callis. As described *supra*, the Medical Center stated that it terminated Callis for failing to

6

protect the property of hospital guests, noting that at best Callis was grossly negligent, and at worst he committed a theft.

The burden thus shifts back to Callis to show that the Medical Center's stated reasons were merely pretext. Callis can meet this burden in two ways: (i) by showing that the Medical Center's explanation is "unworthy of credence" or (ii) by offering circumstantial evidence sufficiently probative of discrimination. Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2006) (quoting Burdine, 450 U.S. at 256). Unsubstantiated allegations and bald assertions are insufficient to prove pretext. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996).

Callis has not presented any evidence to refute the Medical Center's position. On deposition, in fact, Callis does not dispute that the ATM incident occurred and acknowledges that he gave the Medical Center conflicting information about how he acquired the card and money. In his Response in Opposition, Callis merely restates the unsupported allegations contained in his complaint, citing no evidence in the record. Because he has failed to provide any evidence that the Medical Center's reason for his termination was mere pretext for discrimination, Callis's retaliation claim cannot survive summary judgment.

**C.     Callis's Disability Discrimination Claim**

Callis alleges in his complaint that he was terminated in violation of the Americans with Disabilities Act ("ADA") by the Medical Center on the basis of his HIV positive status. In order to establish this claim, Callis must first prove that (i) he is in a protected class, (ii) he was discharged, (iii) at the time of his discharge, he was performing his job at a level that met his employer's legitimate expectations, and (iv) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Ennis v. Nat'l Ass'n of Bus. & Educ.

7

Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995). If Callis is successful in proving his *prima facie* case, the McDonnell Douglass burden shifting framework applies again, allowing the Medical Center to present a legitimate, nondiscriminatory reason for its conduct. Callis must then prove by a preponderance of the evidence that the Medical Center's reason was merely a pretext for discrimination. See id. at 58–59.

Although the Court is skeptical as to whether Callis can make out a *prima facie* case of discrimination under the ADA,[4] assuming *arguendo* that he has, Callis's ADA argument fails for the same reason that his retaliation claim failed. Callis has not pointed to <u>any</u> evidence to rebut the Medical Center's assertion that it terminated Callis for his role in the ATM incident. Accordingly, Callis's claim that he was terminated in violation of the ADA also does not survive summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate Order of even date, GRANT defendant's Motion for Summary Judgment and direct the Clerk to CLOSE the case.

Dated this 14th day of April, 2010.

/s/
Benson Everett Legg
United States District Judge

---

[4] In order to be a member of a protected class under the ADA, Callis must prove that he has an impairment that substantially limits a major life activity. 42 U.S.C. §§ 12102, 12112. Although the Supreme Court has held that HIV constitutes an impairment, Bragdon v. Abbott, 524 U.S. 624, 637 (1998), Callis has provided little evidence that he is substantially limited in a major life activity. Further, this Court is skeptical that a reasonable jury would agree that Callis's termination raised a reasonable inference of unlawful discrimination.